UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

UNITED STATES OF AMERICA,

　　　　　Plaintiff,

　　v.

KEITH DWAYNE CRUM,

　　　　　Defendant.

No. CR08-255RSL

ORDER DENYING DEFENDANT'S MOTION TO DISMISS

## I. INTRODUCTION

This matter comes before the Court on defendant Keith Dwayne Crum's "Motion to Dismiss Indictment Based Upon (1) Washington's Failure to Implement SORNA; (2) Violation of Due Process; (3) Violation of the Non-Delegation Doctrine; (4) Violation of the Tenth Amendment; and (5) Violation of the Right to Travel" (Dkt. #20) and his concurrently filed "Motion to Dismiss the Indictment as Unconstitutional Under the Interstate Commerce Clause" (Dkt. #19). In his motions, defendant requests dismissal of his indictment for failure to register and update registration pursuant to the Sex Offender Registration and Notification Act ("SORNA") because he claims that SORNA does not apply to him and that the Act is unconstitutional. The Court heard oral argument on the motion on October 8, 2008. See Dkt.

#30. For the reasons set forth below, the Court denies defendant's motion to dismiss.

## II. DISCUSSION

**A.     Background**

   **1.     Statutory Background**

On July 27, 2006, Congress enacted the Adam Walsh Child Protection and Safety Act of 2006, Pub. L. No. 109-248, 120 Stat. 587. Title I of the Act codifies SORNA, establishing a national system for the registration of sex offenders "[i]n order to protect the public from sex offenders and offenders against children." 42 U.S.C. § 16901. SORNA requires states to implement compliant sex offender registries or lose part of their federal funding. Id. §§ 16924, 16925. These registries shall form the basis of the national database maintained by the Attorney General. Id. § 16919(a). "SORNA is essentially an effort by Congress to close the loopholes in previous sex offender registration legislation and to standardize registration across the states." United States v. Ditomasso, 552 F.Supp. 2d 233, 236 (D.R.I. 2008) (citing 152 CONG. REC. S8012, 8013 (daily ed. July 20, 2006)).[1]

SORNA requires a sex offender, defined as "an individual who was convicted of a sex offense," id. § 16911(1), to "register, and keep the registration current, in each jurisdiction where the offender resides, where the offender is an employee, and where the offender is a student," id. § 16913(a). Initial registration under SORNA must take place "(1) before completing a sentence of imprisonment with respect to the offense giving rise to the registration requirement; or (2) not later than 3 business days after being sentenced for that offense, if the sex offender is not sentenced to a term of imprisonment." Id. § 16913(b). A sex offender must

---

[1] In 1994, Congress enacted the Jacob Wetterling Act ("Megan's Law"), 42 U.S.C. § 14071, requiring that all states register sex offenders or lose some federal funding, id. § 14071(g)(2). By 1996, every state and the District of Columbia had enacted some version of Megan's Law. Smith v. Doe, 538 U.S. 84, 90 (2003).

ORDER DENYING DEFENDANT'S MOTION
TO DISMISS - 2

also update his registration by registering in the relevant jurisdiction "not later than 3 business days after each change of name, residence, employment, or student status." Id. § 16913(c). Subsection (d) of SORNA's registry requirements reserves some matters to be further regulated by the Attorney General:

> The Attorney General shall have the authority to specify the applicability of the requirements of this subchapter to sex offenders convicted before July 27, 2006 or its implementation in a particular jurisdiction, and to prescribe rules for the registration of any such sex offenders and for other categories of sex offenders who are unable to comply with subsection (b) of this section.

Id. § 16913(d). Pursuant to this subsection, the Attorney General promulgated an interim rule on February 28, 2007 providing that "[t]he requirements of [SORNA] apply to all sex offenders, including sex offenders convicted of the offense for which registration is required prior to the enactment of that Act." 28 C.F.R. § 72.3.

SORNA further establishes a federal crime for failing to register. If an individual (1) is required to register as a sex offender under SORNA, (2) travels in interstate commerce, and (3) knowingly fails to register or update a registration as required by SORNA, he may be fined or imprisoned up to ten years. 18 U.S.C. § 2250(a).

### 2. Factual Background

The government's indictment (Dkt. #11) alleges that on June 7, 1999 and March 13, 2003, defendant was convicted of two separate sexual offenses involving minors. It further alleges that at some time between March 27, 2007 and June 30, 2008, defendant moved to the state of Washington and "did knowingly fail to register and update his sexual offender registration" in violation of 18 U.S.C. § 2250. Dkt. #11 at 2.

## B. Analysis

Defendant challenges SORNA on a number of grounds. The Court will first analyze

ORDER DENYING DEFENDANT'S MOTION
TO DISMISS - 3

defendant's procedural claims regarding SORNA's applicability to him and then discuss his facial challenges to the Act's constitutionality.

**1. SORNA's Applicability to Defendant**

Defendant contends that SORNA does not apply to him because Washington has not implemented the law. According to defendant, because the Attorney General has not issued a rule making SORNA applicable in states that have yet to implement the Act's requirements, he cannot be held to the Act's mandate that he register as a sex offender. Defendant further contends that prosecuting him under a law not yet applicable to him violates the Ex Post Facto Clause of the Constitution as well as his due process rights, as he is unable to comply with SORNA's registration requirements absent implementation by Washington. These arguments are unavailing on all counts.

Washington's failure to implement SORNA has no bearing on defendant's free-standing duty under federal law to "register, and keep the registration current, in each jurisdiction where the offender resides, where the offender is an employee, and where the offender is a student." 42 U.S.C. § 16913(a). See Ditomasso, 552 F.Supp. 2d at 238; United States v. Pitts, No. 07-157-A, 2007 WL 3353423, at *7 (M.D. La. Nov. 7, 2007). While Washington may choose never to implement the law, and thereby forego a portion of its federal funding, see 42 U.S.C. § 16925, an individual sex offender has no option to flout his federal obligation.

Defendant's reliance on the Attorney General's SORNA Guidelines, 72 Fed. Reg. 30210 (May 30, 2007), is misplaced for two reasons. First, and most important, "[t]he plain language of SORNA requires an offender to register, without regard to any construction of the statute by the Attorney General." United States v. Hinen, 487 F.Supp. 2d 747, 750 (W.D. Va. 2007). Defendant's obligation to register was triggered by the enactment of the statute; it is not contingent upon a green light from the Attorney General. See United States v. Zuniga, No. 4:07CR3156, 2008 WL 2184118, at *12 (D. Neb. May 23, 2008) (finding that defendant's

ORDER DENYING DEFENDANT'S MOTION
TO DISMISS - 4

obligation to register under SORNA was "neither created nor altered by" subsequent rules from the Attorney General). Second, even if the Attorney General's opinion on the statute's applicability to defendant were determinative, the Attorney General's Guidelines make clear that "SORNA applies to all sex offenders, including those convicted of their registration offenses . . . prior to particular jurisdictions' incorporation of the SORNA requirements into their programs." 72 Fed. Reg. at 30,228; see also United States v. Gould, 526 F.Supp. 2d 538, 542 (D. Md. 2007).

Because SORNA's registration requirement unequivocally applies to defendant regardless of the statute's implementation in Washington, the government's prosecution of defendant poses no ex post facto problem. The Constitution's Ex Post Facto Clause prohibits laws that punish individuals for acts that were legal when committed. U.S. CONST. art. 1, § 9, cl. 3; Weaver v. Graham, 450 U.S. 24, 28 (1981). To be considered ex post facto, a law must "apply to events occurring before its enactment and it must disadvantage the offender affected by it." Weaver, 450 U.S. at 29. Here, defendant has been indicted for an offense that occurred *after* SORNA was enacted, and, as noted above, the law has applied to him since that time. "There is no dispute [defendant] both traveled in interstate commerce and failed to update his registration after enactment of SORNA. Thus, prosecuting [defendant] under [18 U.S.C.] § 2250 is not retrospective and does not violate the ex post facto clause." United States v. May, 535 F.3d 912, 920 (8th Cir. 2008); see also United States v. Cardenas, No. 07-80108-CR, 2007 WL 4245913, at *10 (S.D. Fla. Nov. 29, 2007).

Defendant's contention that prosecution under SORNA violates his due process rights because he is unable to register in a jurisdiction which has yet to implement the statute is similarly unpersuasive. See United States v. Dalton, 960 F.2d 121, 124 (10th Cir. 1992) (when an essential element of a crime is "failure to do an act that [one] is incapable of performing, [the] fundamental fairness argument is persuasive"). "Even where states have not adopted the

registration requirements, individuals can comply with SORNA by registering under the currently existing system." United States v. Hann, No. 2:08-00002, 2008 WL 4067542, at *7 (M.D. Tenn. Aug. 22, 2008); see also United States v. Van Buren, Jr., No. 3:08-CR-198, 2008 WL 3414012, at *8 (N.D.N.Y. Aug. 8, 2008); United States v. Utesch, No. 07-CR -105, 2008 WL 656066, at *8 (E.D. Tenn. Mar. 6, 2008); Pitts, 2007 WL 3353423, at *7. Every state maintains a sex offender registration system. Defendant is not being prosecuted for failure to register in some SORNA-specific database; he is being prosecuted for failure to register in the state "as required by" SORNA, 18 U.S.C. § 2250(a)(3); see also United States v. Waybright, 561 F.Supp. 2d 1154, 1173 (D. Mont. 2008). Defendant has presented no evidence that he was unable to register in Washington in accordance with SORNA's mandate. Therefore, his due process challenge on this ground fails.

### 2. Notice

Defendant next contends that he had no duty to register under SORNA because the government failed to notify him of the Act's requirements. He adds that in the absence of such notice, prosecuting him for failure to register is a violation of his due process rights. Neither contention has merit.

SORNA specifically requires "appropriate official[s]" to notify sex offenders of the Act's registration requirements and to ensure that they are registered. 42 U.S.C. § 16917(a). However, "nothing in the plain language of SORNA indicates that Congress intended a state's compliance with § 16917 to be a precondition to prosecution for failing to comply with SORNA." United States v. Shenandoah, Nos. 1:07-CR-0500, 1:08-CR-0196, 2008 WL 3854454, at *10 (M.D. Pa. Aug. 20, 2008); see also Zuniga, 2008 WL 2184118, at *15 ("[R]eceipt of notice as required under § 16917(a) is not an element of a 18 U.S.C. § 2250 offense."); Hinen, 487 F.Supp. 2d at 754. Defendant's federal duty to register is stated in the plain language of 42 U.S.C. § 16913 and is not contingent upon any other portion of the statute

or any other actor thereby governed.  A state's failure to comply with SORNA requirements only affects its share of federal funding, 42 U.S.C. § 16925; it does not nullify the statutory requirements imposed on individual sex offenders.

But the inquiry does not end there, for even though notice as specified by the Act was not required, "[d]ue process traditionally requires that criminal laws provide prior notice both of the conduct to be prohibited and of the sanction to be imposed."  Int'l Union, United Mine Workers of Am. v. Bagwell, 512 U.S. 821, 837 (1994).  Defendant cites Lambert v. California, 355 U.S. 225 (1957), in contending that failure to register is "wholly passive" conduct for which specific notice of the law is essential, id. at 228.  However, defendant overstates Lambert's reach. Lambert does not suggest that due process requires all defendants accused of failing to act in accordance with the law be specifically notified by law enforcement officials of their legal duties.  "Few offenders have ever had relevant sections of the U.S. Code read to them before committing their crimes, yet they are expected to comply with it even so."  United States v. Roberts, No. 6:07-CR-70031, 2007 WL 2155750, at *2 (W.D. Va. July 27, 2007).  Instead, Lambert is a "very limited exception to the general principle that ignorance of the law is not an excuse."  Ditomasso, 552 F.Supp. 2d at 244.  In Lambert, not only did the defendant have no actual knowledge of her duty to register, but also lacking were any "circumstances which might move one to inquire as to the necessity of registration," Lambert, 355 U.S. at 229.   That is not the case here.  Following his conviction, defendant was required to register in the state of Missouri, which the government alleges he did until March 27, 2007.  Dkt. #23 at 5. Washington state law also required him to register when he moved into the state.  Revised Code of Washington 9A.44.130.  Therefore, defendant "had sufficient notice that failure to register and update registration was illegal," Pitts, 2007 WL 3353423, at *7; see also Gould, 526 F.Supp. 2d at 545; Hinen, 487 F.Supp. 2d at 754.  Defendant's knowledge of state law registration requirements was enough to put him on inquiry notice of the corresponding federal law.  Due

ORDER DENYING DEFENDANT'S MOTION
TO DISMISS - 7

process requires no more.

Defendant cites United States v. Barnes, No. 07 Cr. 187, 2007 WL 2119895 (S.D.N.Y. July 23, 2007), and United States v. Smith, 528 F.Supp. 2d 615 (S.D.W. Va. 2007), to support his due process challenge. In Smith, the defendant's alleged violation took place before the Attorney General promulgated the interim rule clarifying that SORNA applies to past offenders. The district judge believed that the defendant's duty was created by the Attorney General's rule and not the Act itself and therefore found that SORNA did not apply to him at the time of his alleged violation. Smith, 528 F.Supp. 2d at 618. Barnes similarly found that the Attorney General's rule was the trigger for the defendant's federal duty and narrowly held "that arrest on the same day as the promulgation of interim rule making SORNA retroactively applicable is a due process violation." Barnes, 2007 WL 2119895, at *3. As noted above, the Court disagrees with the Smith and Barnes decisions that Congress "assigned th[e] determination to the Attorney General" whether SORNA would apply to sex offenders convicted prior to enactment, Smith, 528 F.Supp. 2d at 617. Instead, the Court agrees with the line of district court cases, and the only federal appellate court to have decided this issue, to find that SORNA applied to all sex offenders as of its enactment. See, e.g., May, 535 F.3d 912; Hann, 2008 WL 4067542; Waybright, 561 F.Supp. 2d 1154; Zuniga, 2008 WL 2184118; Ditomasso, 552 F.Supp. 2d 233; Cardenas, 2007 WL 4245913; United States v. Mitchell, No. 07CR20012, 2007 WL 2609784 (W.D. Ark. Sept. 6, 2007); Roberts, 2007 WL 2155750; Hinen, 487 F.Supp. 2d 747. But see Gould, 526 F.Supp. 2d 538; United States v. Stinson, 507 F.Supp. 2d 560 (S.D.W. Va. Sept. 7, 2007); United States v. Muzio, No. 4:07CR179 CDP, 2007 WL 2159462 (E.D. Mo. July 26, 2007). But notably, defendant's argument fails even under the standards upheld in Smith and Barnes. Defendant's alleged violation took place at least one month after the Attorney General's interim rule notifying that SORNA "appl[ies] to all sex offenders," 28 C.F.R. § 72.3. There can thus be no question that defendant had ample notice of his federal obligation – and the federal

ORDER DENYING DEFENDANT'S MOTION
TO DISMISS - 8

penalty – under SORNA and that he was therefore afforded due process.

### 3. Non-Delegation Doctrine

Defendant also launches a facial challenge to SORNA by contending that the Act is unconstitutional under the non-delegation doctrine, which prohibits Congress from "abdicat[ing] or [] transfer[ing] to others the essential legislative functions with which it is [constitutionally] vested," Panama Ref. Co. v. Ryan, 293 U.S. 388, 421 (1935). Defendant's challenge is premised on the assumption that SORNA left to the Attorney General the determination of whether to apply SORNA to sex offenders convicted before passage of the Act. However, as stated above, the Court rejects this premise and understands SORNA to apply to all sex offenders as of the date of its enactment. In light of the Court's interpretation of the Act, there is no foundation for invalidating SORNA under the non-delegation doctrine.

Entitled "Initial registration of sex offenders unable to comply with subsection (b) of this section," subsection (d) gives the Attorney General "the authority to specify the applicability of the requirements of this subchapter to sex offenders convicted before July 27, 2006 or its implementation in a particular jurisdiction, and to prescribe rules for the registration of any such sex offenders and for other categories of sex offenders who are unable to comply with subsection (b) of this section." 42 U.S.C. § 16913(d). Numerous courts have examined § 16913(d) to determine precisely what authority Congress delegated to the Attorney General in enacting SORNA. Recently the Eighth Circuit weighed in on the issue and concluded that "subsection (d) 'is very narrow in scope,'" May, 535 F.3d at 918-19 (quoting Roberts, 2007 WL 2155750, at *2), granting the Attorney General only the authority to regulate initial registration for sex offenders who had heretofore not registered in any jurisdiction. In so doing, the Eighth Circuit adopted the reasoning of the district court in United States v. Beasley, No. 1:07-CR-115, 2007 WL 3489999 (N.D. Ga. Oct. 10, 2007). The Court agrees that Beasley's analysis presents the best reading of the statute.

ORDER DENYING DEFENDANT'S MOTION
TO DISMISS - 9

The plain meaning of section 16913(a) conveys that all sex offenders must register as of SORNA's enactment. The text of subsection (d), however, "when considered in isolation and out of context, is ambiguous." Beasley, 2007 WL 3489999, at *6. While the sentence could be read to refer to past offenders *and* sex offenders who are unable to comply with subsection (b)'s procedures for initial registration, see Muzio, 2007 WL 2159462, at *4; United States v. Kapp, 487 F.Supp. 2d 536, 542 (M.D. Pa. 2007), "[a]n additional possible meaning . . . is that past offenders . . . are included within (and not a separate group from) the broader category of 'sex offenders who are unable to comply with subsection (b),' and it is only as to those 'sex offenders who are unable to comply with subsection (b)' that the Attorney General was given authority under subsection (d) to issue clarifying regulations," Beasley, 2007 WL 3489999, at *6. The latter interpretation not only makes sense when read alongside the general duty conferred in § 16913(a), but also is supported by the title of subsection (d), which indicates that the Attorney General's authority is limited to initial registration and therefore does not affect those who, like defendant, have already registered in a state sex offender registry. See Bhd. of R.R. Trainmen v. Baltimore & O.R. Co., 331 U.S. 519, 529 (1947) (noting that headings "are of use only when they shed light on some ambiguous word or phrase"); Waybright, 561 F.Supp. 2d at 1171; Beasley, 2007 WL 3489999, at *6 ("Once the title is considered, the ambiguity in the one sentence text that follows the descriptive title is resolved[.]").

This interpretation also comports with "Congress's primary motivation in enacting this legislation" – to "regulate all sex offenders, regardless of the dates of their convictions." Hinen, 487 F.Supp. 2d at 752 (citing 42 U.S.C. § 16901). Hinen cites Congressional Record statements from the bill's sponsors deploring the fact that over 100,000 sex offenders are currently unregistered, id. at 752 n.5, and correctly notes that "[i]t would be illogical for members of Congress to express concern that thousands of sex offenders who were required to register under state law were evading those registration requirements and then exempt those same offenders

ORDER DENYING DEFENDANT'S MOTION
TO DISMISS - 10

from SORNA," id. at 753.

Indeed, the Attorney General agreed. In the comments accompanying his interim regulation, the Attorney General emphasized that "[c]onsidered facially," SORNA's registration requirements provide "no exception for sex offenders whose convictions predate the enactment of SORNA." 72 Fed. Reg. 8894, 8896 (Feb. 28, 2007). Otherwise "the resulting system for registration of sex offenders would be far from 'comprehensive,' and would not be effective in protecting the public from sex offenders." Id. (quoting 42 U.S.C. § 16901). The Attorney General indicated that he promulgated the rule so as to "foreclose[]" any argument on the matter and "mak[e] it indisputably clear that SORNA applies to all sex offenders (as the Act defines that term) regardless of when they were convicted." Id.

Finally, the Court's interpretation of the limited powers delegated to the Attorney General under SORNA is further bolstered by the canon of constitutional avoidance, which instructs the Court to resort to "every reasonable construction . . . in order to save a statute from unconstitutionality." Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Constr. Trades Council, 485 U.S. 568, 575 (1988); see Hinen, 487 F.Supp. 2d at 753. Determining the retroactive scope of the Act is indeed an "essential legislative function[]," Panama Ref. Co., 293 U.S. at 421, and the Court will not construe Congress to have ceded that power to the Attorney General in SORNA when both the language and the purpose of the Act suggest otherwise.

**4. Tenth Amendment**

Defendant further contends that SORNA impermissibly encroaches upon state power in violation of the Tenth Amendment. The Tenth Amendment provides that the "powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people," U.S. CONST. amend. X, and prohibits the federal government from commandeering state officials to administer federal laws, Printz v. United States, 521 U.S. 898 (1997). Because SORNA does not compel any state action, the Court joins

every federal decision on this issue in rejecting defendant's Tenth Amendment claim. See United States v. Robinson, No. CR 108-021, 2008 WL 4086474, at *9 (S.D. Ga. Sept. 2, 2008) (listing cases).

SORNA includes two components, one applying to individuals and the other applying to states. Ditomasso, 552 F.Supp. 2d at 236. While individual sex offenders are bound to act in accordance with the statute, "[i]t remains the prerogative of the States to implement SORNA," Cardenas, 2007 WL 4245913, at *14. States officials are not compelled to implement SORNA's registration requirements; rather, states are encouraged to amend their sex offender registration requirements through monetary incentives. 42 U.S.C. § 16925(a). Whereas the federal statute in Printz "command[ed]" state officials to conduct background checks on prospective handgun purchasers, 521 U.S. at 902, SORNA "does not require states, or their state officials, to do anything they do not already do under their own laws," Pitts, 2007 WL 3353423, at *9. States may either choose to amend their registration requirements under SORNA or continue to conduct business as usual by registering sex offenders under the state registries already in place.

**5.      Right to Travel**

Defendant claims that SORNA unconstitutionally violates his right to travel. According to defendant, the additional burdens SORNA places on sex offenders who travel from one state to another cannot be justified by a compelling government interest. Defendant correctly notes that the right to travel is a fundamental right protected by the United States Constitution. Shapiro v. Thompson, 394 U.S. 618, 629-30 (1969); United States v. Guest, 383 U.S. 745, 757-59 (1966). However, as the Eleventh Circuit concluded in Doe v. Moore, 410 F.3d 1337 (11th Cir. 2005), "mere burdens on a person's ability to travel from state to state are not necessarily a violation of their right to travel," id. at 1348. In Doe, the Eleventh Circuit addressed Florida's sex offender registration statute, which requires sex offenders to register in the state when they move to or from that state. While the court "recognize[d] [that] this requirement is

burdensome," it held that "it is [not] unreasonable by constitutional standards, especially in light of the reasoning behind such registration." Id. The Court agrees with the Eleventh Circuit that there is a compelling state interest in notifying local officials of the whereabouts of convicted sex offenders in an effort to prevent future sex offenses. Id. at 1348-49. Moreover, SORNA does not prohibit sex offenders from traveling from one state to another, it merely requires them to register when they do so. The government interest is certainly "significant enough to outweigh the inconvenience or burden of a person being required to sign an offender registration form after relocating to a new state." Cardenas, 2007 WL 4245913, at *14.

Defendant contends that SORNA unconstitutionally subjects sex offenders who travel interstate to a harsher penalty than sex offenders who remain in one state. However, in Jones v. Helms, 452 U.S. 412 (1981), the Supreme Court held that "although a simple penalty for leaving a State is plainly impermissible, if departure aggravates the consequences of conduct that is otherwise punishable, the State may treat the entire sequence of events, from the initial offense to departure from the State, as more serious than its separate components." Id. at 422-23. "Under the reasoning of Jones, . . . [SORNA's] harsher penalty is permissible because a sex offender's relocation to another state aggravates the consequences of his failure to register. In particular, relocation makes sex offenders more difficult to track." Waybright, 561 F.Supp. 2d at 1170. Defendant's reliance on Cavins v. Lockyer, 232 Fed. Appx. 655 (9th Cir. 2007), is unavailing, as this case merely held that a habeas petition was not moot as the defendant's right to travel *might* be implicated by the harsher penalty imposed if he chose to leave the state; the Ninth Circuit remanded the case to the district court to consider the issue in the first instance.

Because SORNA neither "unreasonably burden[s]" defendant's fundamental right to travel, Shapiro, 394 U.S. at 629, nor unlawfully penalizes sex offenders who travel interstate, defendant's motion to dismiss on this ground fails.

**6.  Commerce Clause**

ORDER DENYING DEFENDANT'S MOTION
TO DISMISS - 13

Defendant finally contends that Congress exceeded its Commerce Clause power in enacting SORNA's registration provision, 42 U.S.C. § 16913, and its enforcement mechanism, 18 U.S.C. § 2250(a). The Commerce Clause grants Congress the power "[t]o regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes." U.S. CONST. art. I, § 8, cl. 3. The Supreme Court has identified "three broad categories of activity" that Congress may regulate under its Commerce Clause power: (1) "the use of the channels of interstate commerce;" (2) "the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities;" and (3) "activities that substantially affect interstate commerce." United States v. Lopez, 514 U.S. 549, 558-59 (1995); see also United States v. Morrison, 529 U.S. 598, 608-09 (2000). Because the Court views § 16913 and § 2250(a) as interrelated parts of a single statutory scheme with a distinctly national focus, defendant's Commerce Clause challenge fails.

Of the many courts to have confronted the Commerce Clause implications of § 2250(a), all but one, United States v. Powers, 544 F.Supp. 2d 1331 (M.D. Fla. 2008), have upheld the constitutionality of this statutory provision. See, e.g., May, 535 F.3d 912; United States v. Hall, No. 5:08-CR-174, 2008 WL 4307196 (N.D.N.Y. Sept. 23, 2008); Waybright, 561 F.Supp. 2d 1154; Hinen, 487 F.Supp. 2d 747. Section 2250(a) establishes a federal offense where an individual (1) is required to register under SORNA, (2) travels in interstate commerce, and (3) knowingly fails to register or update a registration as required by SORNA. Defendant contends that because § 2250(a) does not require a "direct nexus between criminal activity and the [interstate] travel," Def. Mot. to Dismiss, Dkt. # 19, at 14, it cannot survive any prong of the Lopez test. The Court disagrees, and finds that § 2250 fall squarely within the second Lopez category.

Section 2250(a) explicitly regulates "persons . . . in interstate commerce," Lopez, 514 U.S. at 558, and therefore is a valid exercise of Congress's Commerce Clause power under the

ORDER DENYING DEFENDANT'S MOTION
TO DISMISS - 14

second Lopez prong. See May, 535 F.3d at 921 ("May was undeniably a 'person . . . in interstate commerce' in that he traveled and relocated between various states); Ditomasso, 552 F.Supp. 2d at 245-46. While defendant correctly notes that § 2250(a) does not require an individual to travel interstate for the purpose of evading registration requirements, the Commerce Clause does not require such a direct link. Lopez's second category permits regulation of people who travel in interstate commerce "even though the threat may come only from intrastate activities." Lopez, 514 U.S. at 558. A sex offender's failure to register intrastate is brought within the second category of Lopez by virtue of the statute's jurisdictional nexus; criminal intent need not accompany the move across state lines. See Hann, 2008 WL 4067542, at *4; Waybright, 561 F.Supp. 2d at 1161-62 (citing Ninth Circuit cases finding jurisdictional element sufficient to survive Commerce Clause scrutiny).[2]

But while § 2250(a) "includes an express and clear jurisdictional element," May, 535 F.3d at 921, bringing it directly within the ambit of Congress's Commerce Clause authority, § 16913 contains no such jurisdictional trigger. Rather, § 16913 imposes a federal duty to register on all sex offenders regardless of whether they travel interstate. 42 U.S.C. § 16913(a), (c). For this reason, § 16913, when read in isolation, "raises greater constitutional concern" than § 2250(a). Hall, 2008 WL 4307196, at *8. Most courts have simply addressed SORNA as a

---

[2] Although § 2250(a) need only fit within one Lopez category to pass constitutional muster under the Commerce Clause, the Court notes that the statute also appears valid under the first Lopez prong. See May, 535 F.3d at 921; Waybright, 561 F.Supp. 2d at 1160. In regulating the channels of interstate commerce, "Congress may impose relevant conditions and requirements on those who use the channels of interstate commerce in order that those channels will not become the means of promoting or spreading evil, whether of a physical, moral or economic nature." United States v. Orito, 413 U.S. 139, 144 (1973) (quoting North American Co. v. SEC, 327 U.S. 686, 705 (1946)). Just as Congress may impose conditions on the movement of certain products, see, e.g., McDermott v. Wisconsin, 228 U.S. 115, 128 (1913), so, too, may it impose conditions on the movement of certain people. In the interest of preventing sex offenders from evading state notification laws, § 2250(a) regulates the "use of the channels of interstate commerce," Lopez, 514 U.S. at 558, by requiring sex offenders who travel interstate to adhere to registration requirements.

ORDER DENYING DEFENDANT'S MOTION
TO DISMISS - 15

whole without analyzing separately the two statutory provisions.  See, e.g., May, 535 F.3d at 921-22; Ditomasso, 552 F.Supp. 2d at 246; Hinen, 487 F.Supp. 2d at 758.  The lack of distinction between the registration requirement and the enforcement mechanism indicates that these courts "have treated 42 U.S.C. § 16913 and 18 U.S.C. § 2250(a) as interrelated components of the larger whole of SORNA sufficient to overcome any deficiencies when viewing § 16913 in isolation."  Van Buren, 2008 WL 3414012, at *12.  But recently a few district courts have addressed the constitutionality of each provision separately.  See Hall, 2008 WL 4307196, at *7-*11; Hann, 2008 WL 4067542, at *3-*7; Van Buren, 2008 WL 3414012, at *8-*14; Waybright, 561 F.Supp. 2d at 1160-68; United States v. Thomas, 534 F.Supp. 2d 912, 916-22 (N.D. Iowa 2008).  While Hall and Waybright have struck down § 16913 as unconstitutional under the Commerce Clause, Hann, Van Buren, and Thomas have upheld the statute.  For the reasons stated below, the Court follows the reasoning of the latter cases.

First, § 2250(a) and § 16913 "are interrelated such that a facial challenge to one part of the SORNA cannot be resolved without resort to the totality of the statute."  Van Buren, 2008 WL 3414012, at *13.  The federal duty does not operate in a vacuum.  SORNA's requirement that all sex offenders register is unenforceable until a sex offender crosses state lines, at which point the failure to abide by one's federal duty bears federal consequences.  Together § 16913 and § 2250(a) are "components of a symbiotic statutory scheme in which there is no criminal penalty unless there is a failure to register and, conversely, failure to register cannot be enforced without a criminal penalty."  Shenandoah, 2008 WL 3854454, at *5 n.7 (internal quotation marks omitted).  Section 2250(a) lacks all meaning without reference to § 16913, and § 16913 lacks all effect without reference to § 2250(a).  "As a result, the only registration requirements imposed on offenders who do not travel in interstate commerce are those required by state law."  Pitts, 2007 WL 3353423, at *4.  While Congress clearly intended to impose a duty on all convicted sex offenders in its effort to develop a national registry, the fact that SORNA

ORDER DENYING DEFENDANT'S MOTION
TO DISMISS - 16

prosecutions are limited to those individuals who travel in interstate commerce "evidences that Congress was acutely aware of the breadth of its power under the Commerce Clause when it enacted SORNA." Shenandoah, 2008 WL 3854454, at *4.

Second, SORNA's federalization of sex offender registration requirements seeks to "close loopholes . . . to prevent sex offenders from being lost to tracking efforts as they travel from state to state," Ditomasso, 552 F.Supp. 2d at 244, a goal that no individual state has the power to accomplish. "Courts have consistently recognized that federal statutes enacted to help states address problems that defy a local solution constitute an appropriate exercise of Congress's Commerce Clause power, because this power includes the authority 'to govern affairs which the individual states, with their limited territorial jurisdictions, are not fully capable of governing.'" United States v. Reynard, 473 F.3d 1008, 1023-24 (9th Cir. 2007) (quoting United States v. Black, 125 F.3d 454, 459 (7th Cir. 1997)). SORNA's emphasis on "coordination among registries and enforcement of registry requirements," Hann, 2008 WL 4067542, at *6, bolsters its validity under the Commerce Clause; to the extent SORNA reaches intrastate activity, it does so with a distinctly national purpose that transcends state lines and state capabilities. If anything, this attempt at interstate coordination preserves rather than destroys the distinction between "what is truly national and what is truly local," Lopez, 514 U.S. at 567-68.

Finally, § 16913 finds further support in the Necessary and Proper Clause. The Necessary and Proper Clause grants Congress the power "to make all Laws which shall be necessary and proper for carrying into Execution the [Congressional] Powers" enumerated in the Constitution "and all other Powers vested by th[e] Constitution in the Government of the United States." U.S. CONST. art. I, § 8, cl. 18. This Clause "empowers Congress to enact laws in effectuation of its enumerated powers that are not within its authority to enact in isolation." Gonzales v. Raich, 545 U.S. 1, 39 (2005) (Scalia, J., concurring). SORNA presents a "comprehensive scheme of regulation," id., under which the need to prevent sex offenders from

"being lost in the cracks *between* state regulations," Ditomasso, 552 F.Supp. 2d at 246 (emphasis in original), requires initial and continuing registration at the state level. Granted, SORNA's registration requirement is not narrowly tailored to the interstate reach of § 2250(a); as the Hall court correctly noted, Congress could have "limited the scope of § 16913 to sex offenders convicted of federal sex offenses or who travel across state lines as it did with § 2250(a)." Hall, 2008 WL 4307196, at *9. But the means chosen, intrastate registration and updating, are "'reasonably adapted' to the attainment of a legitimate end under the commerce power," Raich, 545 U.S. at 37 (Scalia, J., concurring) (quoting United States v. Darby, 312 U.S. 100, 121 (1941)). The effective regulation and tracking of sex offenders who travel interstate under § 2250(a) requires registration on the state level in order to achieve SORNA's national objective.

Accordingly, the Court holds that both 18 U.S.C. § 2250(a) and 42 U.S.C. § 16913 are constitutional under the Commerce Clause, and defendant's facial challenge to SORNA therefore fails.

### III. CONCLUSION

For all of the foregoing reasons, Defendant Crum's "Motion to Dismiss Indictment Based Upon (1) Washington's Failure to Implement SORNA; (2) Violation of Due Process; (3) Violation of Non-Delegation Doctrine; (4) Violation of the Tenth Amendment; and (5) Violation of the Right to Travel" (Dkt. #20) and his "Motion to Dismiss the Indictment as Unconstitutional Under the Interstate Commerce Clause" (Dkt. #19) are DENIED.

DATED this 8th day of October, 2008.

*/s/ Robert S. Lasnik*
Robert S. Lasnik
United States District Judge